Next case is Zurn Industries v. Allstate Insurance Company. It's going to take a minute but whenever you're ready Mr. Beyer. Thank you very much, Your Honor, and may it please the Court, I am Robert Beyer and I represent the Appellant American Home Assurance Company in these cross appeals and then also in the cross appeal I also represent Appley Granite State Insurance Company and these have been referred to as the AIG parties. With the Court's permission, I'm going to ask Mr. Beyer to come up to the podium and give us a little bit of background on what's going on here. And I'd like to reserve four minutes for rebuttal. On the appellate jurisdiction issue, this really turns in this case on whether the order granting partial summary judgment imposed an immediate enforceable duty on American Home to commence paying for Zurn's defense. This Court has determined in the Romara case that orders of such a nature are deemed to be injunctive in nature and in Romara this Court relied on the 2014 opinion of this Court in the Alenikoff case written by Judge Fisher in which the Court also stressed that labels don't matter. It doesn't matter whether the order is framed in terms of injunctive relief or declaratory relief, but really Romara relied on Alenikoff in saying that the Court takes a functional approach. The context of this case and context of this order shows why it was immediately effective and why the parties understood it to be so. To begin, on October 31, 2018, at District Court document number 28, Zurn moved for an expedited funding order directing the insurers to begin paying for its defense in the asbestos litigation. And on November 20, 2018, at District Court documents 65 and 66, the District Court denied that motion without prejudice to re-raise the issue, to reassert it as a motion for summary judgment. Zurn then filed an amended complaint which appears in the appendix at page 199 requesting a declaratory judgment that American Home must defend and indemnify Zurn and in count six at page 205 of the appendix asserted that American Home has a duty to defend Zurn and must pay defense costs in addition to policy limits. In the order granting Zurn's motion for partial summary judgment on September 30, 2021, and this is at appendix page 52, the District Court stated that the motion is granted with respect to count six in so far as Zurn seeks a declaration that American Home must pay defense costs in addition to the policy limits. Zurn understood that order was immediately enforceable because 20 days later after the order granting its motion for partial summary judgment on count six, Zurn's counsel sent an e-mail dated October 20, 2021, to counsel for American Home stating that, quote, it is time to start paying under the policies and requesting that counsel, quote, confirm that they will do so now, close quote. And that appears at page A178 of the appendix, and that was attached as an exhibit to American Home's Rule 54B motion. For these reasons, it meets all of the elements of the Romara case in terms of an order that is deemed to be injunctive in nature, and particularly as that was defined by this court in the Alenikoff decision. It does not matter that the order was in the form of a declaratory judgment, and indeed, and I apologize that these statutes are not cited in our brief, but Congress has provided in the Declaratory Judgments Act that in 28 U.S. Code section 2201 that a declaratory judgment shall have the force and effect of a final judgment or decree and shall be reviewable as such. And beyond that, in section 2202 of Title 28, Congress has provided that further necessary or proper relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing against any adverse party whose rights have been determined by such judgment. So Zern immediately could have filed for relief in the district court, whether by contempt or some other order of enforcement, and if American Home had not appealed from the injunction, I could almost guarantee the court that if American Home tried to appeal from that later enforcement action, the argument would be made, and probably with some success, that the later appeal was too late. And that is supported by the Ninth Circuit decision in the Gone case. Yes, Your Honor. Is there a position that we need to consider the context, not just the plain language of the district court's order should find that this is injunctive? That's correct, Your Honor. The U.S. Supreme Court in the Abbott case, this court in Alenikoff, said that it's really what was the function of the order, what did the order do, what was its practical effect, not what it was labeled by the district judge, because otherwise you could label an order to avoid review. But Ramara says that we're supposed to look at what the court says in its order, not what the parties ask for. And so it sounds to me a bit like you're asking us to look at what the parties ask for and to, you know, read between the lines. Well, what I'm asking the court to do is to review what the district court said in the context of the record that was before the district court and what the district court itself had said that led to that order in terms of reasserting that motion for funding as a motion for summary judgment. Why is the district court's order more like Ramara than American Motorist's? American Motorist was the opposite situation. American Motorist involved a claim by the insurance company that it had no duty to defend. And this court said that such an order doesn't change the insurance company's position when it's denied. There's nothing injunctive about that. Now, the law might have evolved a little bit since American Motorist with this court's decision again in Alenikoff and Ramara coming subsequently. But the situation in American Home, if you could characterize it as anything, it might have been the denial of an injunction, which also could be appealable under certain circumstances. But in the Carter case, the U.S. or Carson, rather, versus American Brands, the Supreme Court said that in order to have a deemed denial of an injunction for purposes of Section 1292A1, the defendant must make some showing or the appellant must make some showing of irreparable harm. This court, later in the en banc decision in Cohen versus Board of Trustees in 1989, held that that aspect of Carson applies only to deemed denials, not to tacit grants of injunctive relief. It seems to me that you argue a lot about what you did as opposed to what the order says. There are outstanding questions regarding exhaustion at the time you reference. So with all these outstanding questions, how could your client be faced with any contempt as a result of that order? Well, the question of exhaustion arose only ten months later when the case, there was an appeal pending and our appeal was pending and it was held up on the question of jurisdiction. And so by that point, the policy was exhausted. But that is in contest because while we claim that the policy limit was exhausted, Zurn and some of the other carriers contend that our limit was $15 million and not $5 million. The district court did not grant that motion for summary judgment. I think where that's relevant is to show why this is still a live case or controversy, because this situation could easily be repeated without review. If we get back to the district court, the district court then grants, let's say, that motion for summary judgment, holds that the limit is annualized. And then we, or it's not, it holds that the limit is $15 million, in which event we're again making payments without any remedy. The whole purpose of Ramara, the whole purpose of the Supreme Court jurisprudence, and this court's opinion in Alenikoff, recognizing these types of injunctive orders, is to allow for review to be granted when a party has to change its position in such a dramatic way. Otherwise, the remedy would be under Rule 54B, and we've asked this court to clarify that. The district court here did not act on our Rule 54B motion. We finally withdrew it without prejudice, because the clerk's office had made clear that this case was not going to move forward on appeal in this court, while a 54B motion was pending in the district court. Meanwhile, the payments are continuing them out. So that was the situation that we found ourselves in. In Alenikoff, we said that in order for such an order to be injunctive, it has to impose an ongoing immediate obligation with ongoing court supervision. At least in that case, that's what was involved. It was an immediate, ongoing process. We had to make payments as bills were being tendered for the defense. And indeed, we commenced making those payments, as Zurn had demanded. But at the same point, our client believed that that was subject to review under this court's precedent, particularly Romara, which has been followed in just about every circuit that has had to consider this issue. This is not an unusual situation. If we declined to exercise jurisdiction over your client's appeal, is there an independent basis for us exercising jurisdiction over Zurn's cross appeal? No. Zurn's cross appeal is based solely on pendent appellate jurisdiction, and that requires an inextricable relationship between that issue, the issues that Zurn is raising, and the issues that we're raising in our appeal. For the reasons we have briefed, we don't see that inextricable relationship. That also was dealt with in Alenikoff in terms of what constitutes that type of relationship. If this court were to decline to exercise jurisdiction of our appeal, all the appeals would have to be dismissed. But we would request that in that instance, that this court direct the district court to consider Rule 54B at that point, rather than just simply say there's no appellate remedy here. But I think we do fall within Romara. Did you say you had asked for that, you had made a Rule 54B motion? There was a Rule 54B motion made in the district court before we filed this appeal. No action was taken for over 10 months by the district court. We filed our appeal to avoid missing that deadline, and as I say, the district court never acted on it, and we had to withdraw that motion in order for this appeal to proceed in this court, because the clerk's office was not allowing it to go forward. In Alenikoff, the district court's order that we were reviewing had six paragraphs, and I'll just read the sum of the first two. Defendant is ordered to pay Alenikoff's legal fees and expenses incurred to date in connection with the state action, and to pay such fees and expenses periodically as they are incurred going forward. Paragraph two, Magistrate Judge Hammer will supervise the payment process. You know, compare that to the order here, where the court says in response to the declaratory judgment motion that the insurers must pay defense costs. How do you reconcile those, you know, the Alenikoff order and this more spare order? The Alenikoff order was more detailed. The Romara order contained a little bit more detail, but I would say this order is very similar to the order that was involved in the Nautilus insurance case, which was the non-presidential opinion that was authored by Judge Restrepo, in which, again, it was just simply directing that the insurer assume the defense or begin making payments. I forget the exact language of that order. I looked at it. Unfortunately, I do not seem to have that with me, but the – oh, I do. It simply says the order in Nautilus insurance was – and this is in the district court in that case at document 49. Nautilus has a duty to defend defendants in the underlying suits until it is clear that there is no longer a possibility of a product-related tort claim, and this court held that was appealable under 1292A1. So with that, my time is up. I did not have a chance to discuss the merits. I can do that now or return on rebuttal. Why don't you take a few minutes? In terms of the merits, Your Honors, the district court was dealing with the American home excess insurance policy, which we contend to be an indemnity-only policy. We believe the district court misconstrued this by implying a defense duty as part of this indemnity-only policy. The district court did this in two ways. First, by looking to the investigation defense settlement and assistance clause of the underlying liberty mutual umbrella policy, and the operative language of that was that the claim – in order to trigger that duty of defense, that the claim would not have to – that the claim could not be covered under another underlying policy of insurance. And what the district court held in our case was that not covered included exhausted, and that is contrary to a plethora of legal authority that we have cited in our briefs. Moreover, in the record of this case, what's very interesting is there is a policy issued by Aetna that shows how a policy can be written that would provide excess cover for defense costs where the underlying policy is exhausted. This appears at page A698 of the appendix, and in section 2.3 of this policy by Aetna, it says that it's a similar clause, defensive suits not covered by other insurance, and it gives two circumstances under which it's not covered, either because such damages are not covered thereunder or, quote, because of exhaustion of an underlying aggregate limit of liability by payment of claims. So it shows that insurers know how to write these clauses, insureds know how to request these clauses. The Tenth Circuit, in a case cited in our reply brief on page 17 in the Scotts Liquid Gold case, said that basically you would expect an insurance carrier to write such a clause if it were going to be governed by it. That's exactly what we have in the record of this case. The policies here do not contain that language, and the district court erred in implying it. You also relied on Endorsement 1, right? Yes. Which obligated American Home to indemnify the insured on the same terms and conditions as an underlying policy, which would be the Liberty Mutual umbrella policy, which in turn requires them to indemnify Zurn to the same extent as the Liberty Mutual primary policy, I guess was the argument. Why is that incorrect? Because the operative language there is that where that endorsement is triggered, this insurance shall indemnify the insured upon the same terms, conditions, and limitations of the applicable underlying insurance. That word indemnify is referring to the duty to indemnify as distinct from the duty to defend. These are concepts that appear throughout the case law. It's recognized in Pennsylvania. For example, the A.H. France case that is cited by the parties refers to the duty to defend as being broader than the duty to indemnify. So this Endorsement 1 does not pick up any defense obligation. It simply relates to indemnity. And there is language in case law, for example, where this language, we rely on the Nutter case, for example, which involved almost identical language, and it shows the fact that courts are enforcing these policies as written. The case law, the Siltronics case that is cited by Zurn, I believe, involves much broader language. It doesn't say shall indemnify. It says shall pay. And that's why we believe that that was error for the district court to rely on here. Okay. Thank you. Thank you. Is it Mr. Murphy next? Yes, it is. Good morning. May it please the Court. My name is Patrick Murphy, and I represent Zurn, the cross-appellant and appellee. I'll start with jurisdiction, the topic of the day. Violations of court orders routinely subject parties to sanctions, but not every court order is an injunction that is immediately appealable under 1292A1. So how do we know which court orders are injunctions? According to this court's jurisprudence, they must grant some substantive relief, and a Council 4 appellant noted that the order in question did grant part of the relief that Zurn has sought in Count 6, but not all of the relief that Zurn sought in Count 6. The order did not address American homes' limits, which is an important aspect of determining for how long must American home defend and which suits. Second, the injunction, in order to be an injunction, an order must be specific. This order is not specific. It is specific only in that it directs, it defines American homes' obligation to pay defense costs in addition to limits. It does not direct American home to pay in any case, much less all cases, much less cases now and in the future. American home concedes this at page 28 of its opening brief. It notes that the court order did not direct American home to undertake the defense. It didn't. We all agree. American home did undertake the defense. As Council notes, when I wrote in my email of October 20th, dated, I'm sorry, October 20th of 2021, in the appendix A-178, but my email is a little bit longer than the language that was referenced here today. What I said is that it's time for AIG and travelers to start paying under their triggered and attached policies. And I went on to say, as to the amount each insurer must pay, Zurn suggests the insurers work that out between themselves. The court also did not address the amount that American home must pay, whether all or some portion. None of these details exist in this court, in the courts, in the order under review today, and it therefore is not an injunction. It's a court order. It's a declaration. And if American home had decided not. Isn't it a directive? It is. It is not a directive to pay in any particular suit, Your Honor. It is a directive. It defines the obligations of American home under the language of its policy. But it did not go on, as so many orders have, to say, pay in these suits. And that's important because there are 7000 suits pending against Zurn. Not all of which allege injuries that fall within the period of the American home policy. Those are issues that the parties have been able to work out between themselves and didn't have to ask the court for any relief on. So the court didn't direct American home which suits it needs to pay and which amounts, and for that matter, for how long. Which is why American home, notwithstanding that it contends it's been enjoined to pay, has stopped paying. The injunction that they. They've said they've paid. They've said they've paid all they owed. But the order doesn't. I mean, if the order is an injunction, it doesn't say you can stop. It doesn't say pay until you've paid these limits. And the limits. They said they paid all they owed. People don't normally pay unless they're directed to pay. The all they owed portion, Your Honor, is is debated and is the subject of the exact same motions in the district court right now. The court, the district court, resolved only one aspect of the party's dispute. Whether defense costs erode the limits of the American home policy. The district court did not resolve what those limits are. That very issue has been briefed and has been sitting before the court in the same motions and has not been decided. Did you join in their rule 54 B motion? We did not. OK, so I asked Mr. Byer why the order is for Mara, not American motorists. Let me just ask you the opposite question. Why is it American motorists and not Ramara? Just like in American motorists, this order defines American homes defense obligation, but it doesn't direct American home to pay in motorists. So the court refrained from taking that additional step in part because there was an issue about the pollution exclusion and whether there would be any coverage under the policy. They had the insurer had an obligation to pay pending resolution of that issue. But the court could not grant a motion for summary judgment because of the pending exclusion here. We don't have an exclusion at issue, but we do have different dates of first exposure that triggered different policy periods. And the parties never asked the court to resolve that because we know how to and it wasn't disputed. So the order says the motion is granted insofar as Zurn seeks a declaration that American home insurance must pay defense costs. So must pay sounds, you know, I guess you could say must pay according to the policy. That's a declaration. But must, what if it said American home insurance companies shall pay defense costs? I think the outcome would be the same. If it said American home shall pay, must pay, whatever that language is in these suits and identified the suits, then I think it would be remark. There are underlying identifiable suits. American home has been enjoined to pay in them here. We were seeking clarity as to its general obligations. Does it ever pay in any suits defense costs? And if so, do those defense costs erode its limits? Because the parties didn't dispute how we figure out which suits it must pay in when it has that obligation. So the court was, and that's why I think it's difficult to read district court judges' minds, but that's why the district court did not grant the Rule 54 motion in my view, notwithstanding that it had been pending for a substantial period of time. The same district court, as Counsel for Appellant noted, had previously been asked to enter an order for interim funding that would require all state and Hartford to pay in particular suits, all of the suits. And the court denied that motion, finding that Zurn had not satisfied the requirements for an injunction and that discovery would be needed for us to receive that relief. That's, earlier in the case, that's what the court did when the court thought it was going to, it was asked to issue an injunction. Contrast that with the summary judgment motions, which sought declarations of general duties and obligations. In this respect, Your Honors, I would submit that this case is very similar to the Wright case from this court in 2021, where a trustee disputed whether ERISA governed a trust, and the court declared that yes, ERISA governs the trust. The trustee argued that the trustee had been enjoined to comply with ERISA. The court found not so. There was no appellate jurisdiction over the underlying order because the trustee had not been enjoined. It's the same circumstance here. American Home has been, its obligations have been defined. But just as the trustee in Wright was not enjoined, nor has American Home been enjoined here. I think conduct's important. If you look at American Home, if they had been enjoined, they're in violation of that today. And CERN hasn't sought to enforce it with contempt. Why isn't the order final and immediately appealable simply under the Declaratory Judgment Act 2201? In part because it doesn't define the limits, which is the rest of the declaration that we sought. Our count six sought three different components to be declared. One was that they'd pay defense costs. Two is that they'd have paid them in addition to limits. And three is that their limits were annualized. And the court never got to the third issue, although it is pending before the court. This litigation, unfortunately, has resulted in piecemeal litigation both at the district court and now piecemeal appeals before this court. But I'd be happy to turn to the merits if the court would permit. Sure. I guess I should say on jurisdiction, one final point is that CERN's cross-appealed. We believe that if there's jurisdiction, it would be – the jurisdiction would extend to the cross-appeal because we're appealing the same orders that raise the same issues on the same underlying motions and that all involve the same language of the underlying policies, in particular the liberty-mutual primary policies that all of the policies at issue incorporate in some form or fashion. And the converse applies if we don't have jurisdiction. Agreed, yes. If you do not have jurisdiction over American Homes Appeal, you do not over ours. Right. On the merits, it says the court has been discussed this morning. American Homes Policy follows form to underlying umbrella liberty-mutual policies, which in turn follow form to underlying liberty-mutual primary policies if the primary policies provide greater protection. Counsel argued that the language in endorsement that incorporates the underlying primary policy terms suggests that it is only to pay settlements or judgments and not for defense costs. The word indemnify does not denote or connote any such limitation. It just means to reimburse. So there's no difference between American Homes shall indemnify and American Homes shall pay. Those are the same thing. And when you look at the umbrella terms, counsel argued that, as American Home argued at the district court, that the promise here was to pay for suits not covered by underlying insurance. And counsel noted that there's a plethora of decisions that are in accord with that argument, none construing this language. The only decision construing this exact same language is the Viking Pump decision by the Delaware Supreme Court, which finds exactly as the district court did in this case. Not covered in this language means not collectible because that's how liberty-mutual defined its coverage in the coverage section. And liberty-mutual, of course, paid defense costs in addition to limits for roughly a decade, paid tens of millions of dollars of defense costs and separately settlements. American Home, which followed form to the liberty-mutual umbrella and by virtue of endorsement number one to the liberty-mutual primary, argues that liberty-mutual misunderstood its own policy, policy language that liberty-mutual wrote, standard language that appeared in standard forms that they issued for years to other insureds, including Zurn, and in every event paid defense costs in addition. Just as the district court found American Home must do here. Why should we be bound by liberty-mutual's interpretation of its own policy when a court didn't specify what the policy required? Because under Pennsylvania law, bound is a strong word. Under Pennsylvania law, course of conduct, in particular the course of conduct of the party that authored the language, is compelling evidence of what that party intended. And this is a contract construction question. I don't know that the court is bound by liberty-mutual's conduct, but it's certainly compelling evidence of what liberty-mutual intended. And the purpose of the review is to determine what the parties intended. And here I think that the evidence of what liberty-mutual did is compelling evidence of what it intended. I'm going to turn for just a moment, if it's okay, to the cross-appeal in our arguments, because I know Counsel for All State will address them. The Northbrook policies at issue from 1979 and 1980 through 1983 are umbrella policies. Under them, Northbrook agreed to pay undefined term ultimate net loss equal to stated limits. It then goes on to say and reference the same ultimate net loss limits of underlying policies. In other words, Northbrook will pay when the underlying policies have paid ultimate net loss equal to their limits. Those underlying policies paid defense costs in addition to limits. Those are the liberty-mutual and traveler's policies at the first umbrella layer. By using the same term, ultimate net loss, to refer to payments that will erode the Northbrook limits, the same term being used to reference the payments that will erode liberty-mutual and traveler's limits, Northbrook confirmed its intention that defense costs also would not erode its limits. It then went a step further and incorporated the definition of ultimate net loss from the underlying policies. Ultimate net loss isn't defined in the liberty-mutual policy, but it is in the traveler's policy, and it's defined to exclude defense costs. So Northbrook must pay those costs, or Allstate must pay those costs, but they do not count to erode its policy limits. The district court erred in reviewing the coverage language and finding that the Northbrook policy does, in fact, confirm that it pays defense costs. But the coverage section doesn't tell us whether those payments erode the limits. The limit of liability section confirms which payments erode limits, and that is where Northbrook identified the payments by reference to the exact same payments that erode underlying limits, and those underlying policies confirm defense costs do not erode limits. That's all I've got. Anything further? Thank you very much, Your Honors. Good morning, Your Honors. Miles Morrison for First State Insurance Company and New England Insurance Company, referred to as the Hartford parties. As I'm sure you gathered from the briefs, we are fully aligned with Zurn on this appeal, and so I will not repeat what Mr. Murphy said and will endeavor to be very brief. Just a couple of additional points with respect to jurisdiction. I agree that the order at issue here are not injunctive. They didn't direct American Home to do anything, and I think it's also instructive to note that the email of Mr. Murphy's that Mr. Byer referenced doesn't say it's time to pay under the court's order. It says it's time to pay under the policies, because what the order did was it declared American Home's obligations under the insurance policy. Now, had American Home violated that order, it would have been breaching its contractual obligations as declared by the court. It would not have been violating a court order directing it to pay, and so I think this case is, in fact, akin to American Motorists and distinguishable from Ramara and all of the other decisions cited in the briefs. The Nautilus decision that Mr. Byer mentioned I think is also distinguishable from this case. In Nautilus, for two reasons at least, in Nautilus the insurer was already defending, and the insurer sought a declaration that it had no duty to defend. So as a practical matter, the insurer was seeking permission from the court to change its conduct, to stop defending, and the court said no. So you can imagine, or I can imagine, that in that situation, had the insurer in fact said, you know what, I had a change of heart and I'm not going to defend anymore, that you would get closer at least to a possible contempt finding if challenged in the district court. I think the other difference there, and this dovetails with something Mr. Murphy mentioned, is that in Nautilus the defense related to two specifically known and identified underlying suits that the insurer was already defending. And so there was nothing further to be determined, and if any further motion were to have been filed to compel the insurer to continue its defense, for example, it would have been purely ministerial. There was nothing else for the district court to consider or determine, which is not the situation we have here. With respect to the merits, oh, before proceeding to the merits, I'll just also note that if the order is, if the panel disagrees and finds that there is jurisdiction with respect to American Homes Appeal, I agree with Mr. Murphy that there would then also be pendant jurisdiction as to Zurn's Cross Appeal. And I note in that regard that when he reached the merits, Mr. Byer touched on a 1980 policy issued by Aetna, and I think that just underscores the point that if the panel is inclined to look at the issues raised by these appeals, it should be able to review them together in context of Zurn's insurance program, which, as we note in our brief, for the entire period it issued, 1974 to 1983, we think if you line up the policies and read the policies correctly, all of the policies throughout that period all work the same way. They all pay defense costs in addition to the limits of liability, just as Zurn's primary insurers and other underlying umbrella insurers did throughout that period. Now, American Homes says on the merits that its 1974-77 policy is different from the other policies, and that it doesn't have a defense obligation. And one of the key cases American Homes relies on for that point is the Nutter decision. And the Nutter decision, in fact, says exactly the opposite of what American Homes suggests. The court in Nutter did find that the insurer with similar language in its policy, Allianz, didn't have a duty to defend. But the Nutter court went on to find that under the identical language saying that Allianz shall indemnify on similar conditions, the Nutter court went on to find that Allianz there did have to pay and reimburse defense costs, which is exactly what Zurn and Hartford asked the district court to rule here. So that leaves the Northbrook policies, and as Mr. Murphy noted, those fall into two buckets. There's the 1979-1983 bucket, which I think are quite straightforward because of how underlying net loss, or ultimate net loss, is used in those policies to refer to the underlying limits. And then that leaves, just of all the policies, the 1978 Northbrook policy. And our position is that Zurn did not purchase an insurance program where one policy out of all these policies works differently and does not provide, or provides for defense costs that are of limits. And that policy, instead, functions the same way. And how that's determined is through Endorsement 5 to that Northbrook policy. That endorsement has conditions that require the Northbrook policy to follow the terms of the underlying insurance. Those conditions are met here because there's a loss, defense costs, that once Northbrook spent $9 million combined, or paid $9 million combined, there's a loss in additional defense costs that would be covered under the Northbrook 78 policy, but for terms of the Northbrook 78 policy that are more restrictive than the underlying policy. And so those more restrictive terms yield to the broader underlying coverage. Unless the panel has any questions, that's all I have. Thank you. Ms. Truesdale. May it please the Court, Margaret Truesdale for Allstate Insurance Company, a successor in interest to Northbrook. I will be addressing jurisdiction, and my colleague Robert Anderson will be addressing the merits in the remaining eight minutes of our argument time. This Court lacks jurisdiction over both American Homes and Zurn's appeals. Section 1292A1 does not confer jurisdiction over American Homes appeal, and even if this Court could exercise jurisdiction over American Homes appeal, it could not properly exercise pendant jurisdiction over Zurn's appeal. Section 1292A1 does not confer jurisdiction over American Homes interlocutory appeal, because it fails the Supreme Court's practical effect test set forth in Abbott and Carson. The practical effect test has two prongs. Both are necessary. The first is that the order appealed from be the practical equivalent of an injunction, and the second that the order appealed from will cause serious and perhaps irreparable harm if not immediately reviewed, and the American Home cannot satisfy either one. Addressing first the first prong, to be the practical equivalent of the denial of an injunction, an order must be enforceable by contempt. The orders appealed from here are not enforceable by contempt, because, for one, as has been discussed much today, they did not direct American Home to do anything. The District Court interpreted American Homes policies to determine how defense costs should be treated whenever American Homes' obligation to pay defense costs kicks in. It did not declare that American Homes' obligation to pay defense costs has already kicked in, and it certainly didn't direct American Home to start paying. American Homes' obligation to begin paying defense costs kicks in when the underlying policies are fully exhausted. The lawsuits with regards to which Zurn is seeking that American Home pay defense costs actually fall within the scope of American Homes' policy, and any other conditions precedent are satisfied. Here, and this is a point Your Honor raised, Judge Fischer, that here there was still an issue with regards to the underlying policies had been fully exhausted. Zurn had requested a declaration that the policies underlying American Homes' policy had been fully exhausted, and the District Court has not issued any ruling on that point. And as has also been discussed today, there are thousands of lawsuits against Zurn, thousands of asbestos lawsuits against Zurn, and the District Court's orders did not identify which subset of those thousands of lawsuits fall within the scope of American Homes' obligation to pay defense costs. The orders appealed from cannot be enforced by contempt, where both the timing and the scope of American Homes' obligation to pay defense costs still remains to be determined by the District Court. The relief granted here was declaratory in nature. It was not injunctive. Zurn sought a declaration that American Home must pay defense costs in excess of the limits of liability, and that is what the District Court declared. The method of enforcing such a declaration would be inaction for breach of contract. It would not be contempt proceedings. As to the second prong of the practical effect test, American Home never faced serious and perhaps irreparable harm because the District Court, again, didn't direct American Home to do anything. But particularly now, given American Home's representation that it has exhausted its policy limit and is done paying, American Home can no longer credibly argue, even if it ever could, that it would going forward face serious and perhaps irreparable harm if this Court doesn't intervene at this moment. American Home simply cannot evade the clear holding of American Motorists. American Motorists' binding decision by this Court established a bright line between, on the one hand, orders that direct insurers to begin paying defense costs in a particular lawsuit or lawsuits. Those orders would be immediately appealable. And then, on the other hand, orders that simply declare that a insurer must pay defense costs, which are not immediately appealable. American Home seems to be asking this Court to obliterate this line and seek a brand new rule where all orders that declare that an insurer must pay defense costs would be immediately appealable injunctive orders. But that would be contrary not only to this Court's binding precedent in American Motorists, but also the Supreme Court's precedent setting forth the practical effect test in Abbott and Carson. I will move on to address Zurn pendant jurisdiction with regard to jurisdiction over Zurn's appeal, unless this Court has any questions. As Zurn has stated, Zurn rightly concedes that this Court lacks jurisdiction over both American Homes and Zurn's appeals. Zurn is mistaken, however, in arguing that this Court should exercise pendant jurisdiction over Zurn's appeal if it were to exercise jurisdiction over American Homes' appeal. Pendant jurisdiction is not proper here. The only basis on which Zurn has argued that pendant jurisdiction would be proper is in arguing that the appeals are inextricably intertwined, and contending that because certain of the policies at issue in American Homes and Zurn's appeals follow form to the same Liberty Mutual policies, these appeals are inextricably intertwined. They are not, however. The policy language at issue in the two different appeals is different. To determine American Homes' obligation to pay defense costs, the District Court would have to determine if the District Court reviewed American Homes' policies and Liberty Mutual policies. But as to Northbrook, to determine Northbrook's obligation to pay, the District Court only reviewed Northbrook's policies. So in order to review the District Court's decision, this Court would not need to construe the same contractual language, and for that reason they're not inextricably intertwined. For these reasons, Your Honor, unless there are any questions about pendant jurisdiction, and for the reasons stated in our brief, this Court should dismiss the appeals of American Homes and Zurn for want of jurisdiction. Thank you. May it please the Court, Robert Anderson for Allstate as successor to Northbrook. I'll break the argument down into two sections. First, the 1978 umbrella policy brought as primary language, the second, the 79, and later four Northbrook excess policies, and the follow form language. Brought as primary, the follow form. The District Court was correct in declaring that all of the Northbrook policies pay defense costs within their limits of liability. Stated differently, the District Court was correct in declaring that those policies do not pay defense costs in addition to their limits. As to the brought as primary issue under the 1978 policy, the issue is very narrow. Zurn and Northbrook agree that under the form as written, defense costs for Northbrook are $1.5 million. And for Northbrook, or for Zurn's underlying asbestos claims, are ultimate net loss paid within limits. That's the way the policy was written. The issue is endorsement five in the brought as primary condition. Brought as primary conditions are intended, and courts across the country look at it this way, to apply when there's a gap in coverage. When the primary policy is written, it says X. When the umbrella policy is written, if there is some sort of gap or difference in condition, some sort of hole in the coverage, the umbrella policy will say, we got you, we'll cover that. So in this case, Northbrook promises boil down in their brought as primary language, and under Pennsylvania law, you need to look at the language. That determines the intent. Under the language in endorsement number five, Northbrook says, if there is a loss that is payable under the primary policy, or is covered under the primary policy, but is not payable, for whatever reason, under the Northbrook policy, we will cover that loss. So what's the loss? The loss we're speaking of is defense costs for Zurn's underlying asbestos claims. In the first instance, the primary policy covers it, and so does Northbrook. We cover defense costs. So on its face, endorsement number five doesn't apply at all. It's inapplicable, and that's what the district court held, and that's consistent with the general overall purpose of broadest primary policies, as interpreted by courts across the country. Any other construction would be unreasonable, because there's nothing, well, because it's not what the words in our contract say, but there's nothing in that language that suggests that this provision overrides other fundamental terms and conditions, such as limits of liability. The district court judgment in favor of Northbrook on broadest primary should be affirmed. With respect to the four Northbrook excess policies, it's a little different. Those are excess follow-form policies, pretty common for a sophisticated insurance like Zurn. We have a large insurance program for second-layer policies to have follow-form language and simply follow the underlying umbrella. Sometimes that's done with a very broad brush. In the record, there are a couple of excess policies issued to Zurn after Northbrook that did have very expansive follow-form language. Northbrook was more circumspect. In the, if I may just read from appendix of 467, the maintenance of underlying insurance provision, Northbrook says the policy follows form, but it's subject to a broad umbrella. It is subject to the same terms, conditions, definitions, et cetera, except as regards to the premium, the amount, and limit of liability in the underlying policy. Those words are very important. You didn't hear counsel mention the exceptions to our follow-form language. Let's just assume we follow form, hook, line, and sinker to the umbrella as some others did. We didn't, except as to the amount and limit of liability. As an example, we paid $20 million under the 1979 policy, combined damages and expenses. If we were asked to back the defense cost payments out and keep on paying, we'd pay many, many millions more than we would have to pay. If we were asked to pay more than $20 million, it would directly affect the amount and limit of liability under the Northbrook policies. The district court focused on our insuring agreement. There's no ambiguity. Northbrook promises to pay for damages and expenses subject to the terms, conditions, and limitations in our contract. That's clear in the insuring agreement. Then we follow it up with our maintenance of underlying file form and say, except as to the amount and limit of liability, we follow form. It's a direct contradiction to say that you must follow language that says you pay defense costs in addition to the limit of liability. It ignores the language that says we don't follow things as to the amount and limit of liability. All words in a contract need to be given effect. They can't be sort of interpreted or written out of the contract, treated as surpluses. They must be given meaning and intent. So that's our position. The district court properly denied their motion and declared that Northbrook pay defense costs within limits. This court should follow the reasoning in the recent decisions, one from the Delaware Supreme Court in Viking Pump and the other from the Missouri Court of Appeals in the Nutter case, and find that our costs are paid within limits. Thank you, Your Honor. Thank you, Your Honor, and I will try to be brief. With respect to jurisdiction, Mr. Murphy referred to this Court's decision in the Wright case. And I know Judge Porter and Judge Fischer were both on that panel with Judge Schwartz. The opinion in that case makes clear, though, that the reason that order was considered not to be injunctive was that all it did was tell the trustee to comply with ERISA. It did not have any more specificity than that, but what it really was was just basically a direction to follow the law. There was nothing really to appeal from in that case. How is this order not just follow the policy? Well, it's basically saying make payments. And that would have been enforceable under the Declaratory Judgments Act enforcement provision if American Home had refused to make those payments, had declined to make those payments, there would have been the enforceability action filed. And the whole policy of this area, of allowing these appeals under 1291, or 1292, or 54B as an alternative, is that a party shouldn't be required to make payments in futuro of an indefinite amount without having some immediate appellate review remedy. And that is precisely what would be denied in this case if this court were to decline jurisdiction. It's for that reason, for example, that the Carson test with respect to irreparable harm has not been followed with respect to orders that are deemed to grant injunctive relief. And again, this Court's opinion in Cohen makes that clear. Cohen, as an en banc decision, basically said that anything that is in the nature of specific performance falls under 1292A1. And these types of future orders, again, are what in Alenikoff this Court held, is typically the realm of equitable remedies. And they fall under this provision of Title 28 in order to allow the immediate appeal so that the party isn't prejudiced, which would be the case here. In a perfect world, you would deal with these issues all at once and not in a piecemeal fashion. But that depends on how the district court approaches case administration. And in this case, we were ordered to begin making payments. We would have been at our peril had we not done so. Had we taken the position that, well, this order really doesn't mean what it says and we don't have to make a payment until there's a final judgment, if there had been an enforcement order, we probably would have been foreclosed from appellate relief. Because at that point, the only issue would have been was it properly enforced, not whether it was properly entered in the first place. Can you imagine an insurance coverage case where a declaratory judgment claim and motion are filed and it's not injunct and the answer from the court is somehow not injunctive? If the court were saying that on partial summary judgment, let's say, that we find that there was a duty to defend that has been breached, but it doesn't direct anybody to make payments, it doesn't require any payments, and makes clear that enforceability of this would be determined that the conclusion of the case, when there's a final judgment, then that would not be appealable, in my view. What if you're saying that this district court's order could be enforced with a breach of contract action? I think that that ignores Section 2201 of Title 28, which allows the enforceability of a declaratory judgment action to be by simply a motion to the court, rather than requiring a separate breach of contract action. Congress has provided for a much more express remedy in that instance. Thank you very much. Thank you. We'll take a few minutes break before the next case.